Argued and submitted March 14, decision of Court of Appeals vacated and case remanded to Court of Appeals for further proceedings September 26, 2002

## R. L. COATS,
*Respondent on Review,*

*v.*

## STATE OF OREGON
acting by and through its
DEPARTMENT OF TRANSPORTATION
and by and through its
Bureau of Labor and Industries,
*Petitioner on Review.*

(TC 97CV0285MS; CA A105379; SC S48298)

54 P3d 610

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for petitioner on review. Denise G. Fjordbeck, Assistant Attorney General, filed the brief. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Martin E. Hansen, of Karnopp, Petersen, Noteboom, Hansen, Arnett & Sayett, LLP, Bend, argued the cause and filed the brief for respondent on review. With him on the brief was Josh Newton.

Before Carson, Chief Justice, and Gillette, Durham, Leeson, Riggs, and Balmer, Justices.**

BALMER, J.

---

** De Muniz, J., did not participate in the consideration or decision of this case.

**BALMER, J.**

This case presents the question whether, in a breach of contract action, a circuit court has subject matter jurisdiction to review the validity of agency rules that the parties have incorporated as contract terms. The Court of Appeals assumed without discussion that the circuit court has such jurisdiction. *Coats v. ODOT*, 170 Or App 32, 11 P3d 258 (2000). We conclude that, although the circuit court in this case had jurisdiction to consider plaintiff's claims that defendant breached the parties' contract, it lacked jurisdiction over plaintiff's rule challenges. We therefore vacate the Court of Appeals' decision and remand the case for further proceedings.

## FACTS

Plaintiff is a contractor who constructs and repairs public highways in Oregon. On March 21, 1997, plaintiff contracted with the Oregon Department of Transportation (ODOT) to pave a portion of State Highway 20 in Deschutes County (the highway project). The parties' contract was subject to Oregon's prevailing wage statute, ORS 279.350(1), which provides:

"The hourly rate of wage to be paid by any contractor or subcontractor to workers upon all public works shall be not less than the prevailing rate of wage for an hour's work in the same trade or occupation in the locality where such labor is performed. * * *"

The parties do not dispute that the highway project was a "public work"[1] or that ORS 279.350(1) applied here.

The Oregon Bureau of Labor and Industries (BOLI) had promulgated administrative rules construing ORS 279.350(1) to apply to all workers at the "site of work."[2] *See*

---

[1] ORS 279.348(3) provides:

" 'Public works' includes, but is not limited to, roads, highways, buildings, structures and improvements of all types, the construction, reconstruction, major renovation or painting of which is carried on or contracted for by any public agency to serve the public interest but does not include the reconstruction or renovation of privately owned property which is leased by a public agency."

[2] BOLI administers and enforces the prevailing wage laws, ORS 279.348 to 279.380, and has statutory authority to adopt rules necessary to do so, ORS 651.060(4).

OAR 839-016-0004(19).[3] Plaintiff and ODOT agreed to incorporate those rules as terms of their contract.[4] As explained below, central to the parties' contract dispute in this case are two subsections of a BOLI rule that identified the circumstances under which rock quarries, or so-called "borrow pits," would be considered part of the "site of work."[5] First, subsection (b) of OAR 839-016-0004(19) provided:

> "* * * [B]orrow pits * * * are part of the site of work provided they are dedicated exclusively, or nearly so, to the performance of the contract or project, and are so located in proximity to the actual construction location that it would be reasonable to include them. Such facilities which are established by a supplier of materials for the project *after* the opening of bids shall be deemed to be dedicated exclusively to the performance of the contract or project."

(Emphasis added.) Subsection (c) of the same rule provided the following exception:

> "* * * [B]orrow pits * * * which are established by a supplier of materials for the project *before* opening of bids and not on the project site, are not included in the site of work. Such permanent, previously established facilities are not part of the site of work, even where the operations for a period of time may be dedicated exclusively, or nearly so, to the performance of a contract or project."

(Emphasis added.)

In 1995, plaintiff had obtained a permit from the Oregon Department of Geology and Mineral Industries

---

[3] All references to the Oregon Administrative Rules refer to the 1997 compilation, which applied when the contract at issue was formed. BOLI's definition of "site of work" is now found at OAR 839-016-0004(23).

[4] The contract expressly incorporated ODOT's "Standard Specifications," which require compliance with state labor rules. *See* Oregon Department of Transportation, *Standard Specifications for Highway Construction* § 00170.00, 54 (1996) (contractors of public works must "[c]omply with all laws, ordinances, codes, regulations and rules * * * that relate to the work or to those engaged in the work"). As noted, the parties agree that this contract was subject to prevailing wage requirements; the dispute concerns what the prevailing wage statute and regulations require.

[5] The parties do not distinguish among the terms "mine," "quarry," "borrow pit," and "pit," or among the terms "rock," "hard rock," "gravel," and "aggregate," notwithstanding the different meanings, in some contexts, of those words. Because no party argues that any differences in meaning are relevant to the issues in this case, we ignore any such differences in this opinion.

(DOGMI) to mine bentonite on a specified portion of real property that he owned. That property is about 10 miles from the site of the highway project. Two years later, after ODOT had opened bids on the contract for the highway project, plaintiff submitted a map of that property to DOGMI, which designated as a "hard rock quarry" a new area 1,000 feet south of the area approved for mining bentonite. Plaintiff then established a quarry in the newly designated area.

Plaintiff proceeded with work on the highway project, using his newly established hard rock quarry to supply the aggregate required for the project. During construction, plaintiff did not pay prevailing wages to quarry workers who produced rock for the project or to truck drivers who transported rock from the quarry to the construction site.

On May 9, 1997, BOLI sent plaintiff a letter notifying him that, if he failed to pay prevailing wages to the workers producing and hauling rock for the highway project, the agency would consider placing him on a "List of Ineligibles" that would bar him from bidding on public works projects in the future.[6] BOLI based that action on its conclusion under OAR 839-016-0004(19)(b) that plaintiff had established his hard rock quarry after the opening of bids on the highway project and, therefore, that the quarry was "deemed to be dedicated exclusively to the performance of the contract" and part of the "site of work" subject to the prevailing wage requirements of ORS 279.350(1).[7]

## PROCEEDINGS BELOW

Upon receipt of BOLI's letter, plaintiff filed a complaint against the state, by and through ODOT and BOLI, seeking a declaratory judgment that BOLI's rules requiring him to pay prevailing wages to the quarry workers and truck drivers were, among other things, invalid. More specifically, plaintiff asserted that BOLI's rules incorrectly interpreted ORS 279.350(1), which requires that he pay prevailing wages

---

[6] ORS 279.361(1) provides that "[t]he commissioner [of BOLI] shall maintain a written list of the names of those contractors and subcontractors determined to be ineligible under this section and the period of time for which they are ineligible."

[7] Other than the warning letter of May 9, 1997, there is no evidence in the record that BOLI took any enforcement action against plaintiff.

to only those workers "upon [the] public work[ ]." In plaintiff's view, the word "upon," as used in that statute, connotes *direct* geographic proximity to the work site, and BOLI had exceeded its authority by promulgating rules that construed ORS 279.350(1) to cover workers producing and hauling rock from a borrow pit located 10 miles from the highway project. Plaintiff also sought a restraining order to enjoin BOLI from "following through on its threat" to prevent plaintiff from bidding on future public works projects.

The state moved to dismiss the complaint for lack of subject matter jurisdiction, citing *Alto v. State Fire Marshal,* 319 Or 382, 876 P2d 774 (1994), for the proposition that a circuit court lacks jurisdiction to review the validity of agency rules in the context of a declaratory judgment action. While that motion was pending, ODOT withheld payments on the contract. Plaintiff then filed an amended complaint in which he alleged that he had complied with the terms of the contract, including the prevailing wage rules, and that ODOT's decision to withhold payments was a breach of the parties' contract. In addition, because ODOT's decision was based on a determination that plaintiff had failed to comply with the prevailing wage rules, plaintiff argued that the circuit court had acquired subject matter jurisdiction to review the validity of those rules under this court's decision in *Hay v. Dept. of Transportation,* 301 Or 129, 719 P2d 860 (1986). ODOT counterclaimed for breach of contract, and both parties then moved for summary judgment.

In his summary judgment motion, plaintiff asserted that ODOT could not bind him to contract terms that consisted of invalid BOLI rules. In the alternative, plaintiff argued that he had complied with the contract because BOLI's rules, properly interpreted, excluded the workers at issue from the prevailing wage requirement. In that regard, plaintiff argued that, contrary to BOLI's conclusions, he had not established his borrow pit after the opening of bids on the highway project, for purposes of OAR 839-016-0004(19)(b). As noted, under OAR 839-016-0004(19)(c), borrow pits that were "previously established facilities" were not included in the "site of work" and, thus, were not subject to the prevailing wage requirements. Plaintiff contended that the hard rock quarry, although new, was nonetheless part of a "previously

established facility"—namely, the previously established bentonite mine. For that and other reasons, plaintiff claimed that his wage payments to workers at the hard rock quarry had complied with the BOLI rules and, therefore, also had complied with the terms of the contract.

The state responded that BOLI's rules were valid and that, even if they were not, plaintiff was bound by them because they were terms of his contract with ODOT. Further, the state argued that plaintiff was well aware of BOLI's rules and the manner in which that agency interpreted them when he signed the contract and that plaintiff, after signing the contract, could not challenge the facial validity of BOLI's rules, or that agency's interpretation that the rules applied to the workers involved here, in a claim for breach of contract.

The circuit court granted plaintiff's motion for summary judgment and denied the state's motion. That court declined to address plaintiff's rule challenge, accepting instead plaintiff's alternative argument that the hard rock quarry was part of a "permanent, previously established [facility]" under OAR 839-016-0004(19)(c) and, therefore, that it was not included as part of the "site of work." Accordingly, the circuit court held that plaintiff had complied with the terms of his contract with ODOT and that he was not required to pay his quarry workers or truck drivers prevailing wages.[8]

The state appealed. The Court of Appeals affirmed the judgment of the circuit court, although that court decided instead to address plaintiff's rule challenge. Applying principles of administrative law, the Court of Appeals agreed with plaintiff's assertion that the phrase "upon all public works," as used in ORS 279.350(1), requires contractors to pay prevailing wages to only those who are working in "close proximity" to the actual construction site. *Coats*, 170 Or App at 40. Then, although holding that BOLI's rules were not invalid facially, the court reasoned that BOLI's interpretation of its rules in a manner that required plaintiff to pay prevailing wages to workers at a borrow pit 10 miles from the

---

[8] At oral argument on the motions for summary judgment, the trial judge stated, "As far as I'm concerned, if this site had not been opened prior to the opening of the bids, then I would have ruled the other way."

construction site was inconsistent with ORS 279.350(1) and, therefore, implausible. *Id.* at 40-41. As a result, the Court of Appeals concluded that plaintiff was not required to pay prevailing wages to those workers and that his failure to do so was not a breach of his contract with ODOT. *Id.* at 41. Because the court determined that BOLI's application of its rules to plaintiff was based on an implausible interpretation of those rules, it expressly declined to reach the issue that the circuit court had decided—"whether plaintiff's rock quarry was 'established * * * before opening of bids' and therefore not subject to the prevailing wage law under OAR 830-016-004[(19)](c)." *Id.* We allowed the state's petition for review.

## DISCUSSION

■        On review, the parties continue their disagreement over the validity of BOLI's rules, and the state argues that the Court of Appeals erred in concluding that BOLI had applied its rules improperly. However, after reviewing the record and procedural history of this case, we conclude that the case presents problems of subject matter jurisdiction that limit our consideration of the issues that the parties have argued and that the Court of Appeals decided. When a question of subject matter jurisdiction presents itself at any stage of a proceeding, whether on the motion of a party or on the court's own motion, it is the court's duty to address it. *See City of Lake Oswego v. Mylander,* 301 Or 178, 180, 721 P2d 433 (1986) (so stating).

As noted above, although plaintiff named ODOT in his amended complaint for breach of contract and asserted that he had complied with the contract's prevailing wage requirements, his complaint also challenged the validity of BOLI's rules interpreting the prevailing wage statute. The amended complaint is problematic, because the appropriate forum for review of agency rules depends on the type of rule challenge a plaintiff brings and the context in which the challenge is brought. Circuit courts have jurisdiction to review agency rules in certain circumstances, but, as we discuss below, the necessary circumstances are not present here. Accordingly, because the circuit court in this case never had jurisdiction to review the validity of BOLI's rules, either on their face or as applied to plaintiff (and, in fact, did not do so), it was error for the Court of Appeals to base its decision on

such a review. *See Dippold v. Cathlamet Timber Co.*, 98 Or 183, 188, 193 P 909 (1920) (if court lacks jurisdiction, it is court's duty, on its own motion, to refuse to proceed further).

■     Statutes, and decisions of this court, identify several ways in which a plaintiff may seek judicial review of an administrative rule. The Administrative Procedure Act (APA), ORS 183.310 to 183.500, provides that the validity of an agency rule is subject to judicial review either "upon a petition by any person to the Court of Appeals," ORS 183.400(1), or by a court "upon review of an order in any manner provided by law or pursuant to ORS 183.480 or upon enforcement of such rule or order in the manner provided by law," ORS 183.400(2). *See Hay*, 301 Or App at 136-37 (explaining avenues for judicial review of agency rule). Neither subsection of ORS 183.400 provided the circuit court with jurisdiction over the rule challenge in this case. ORS 183.400(1) authorizes review of agency rules in the Court of Appeals, not in the circuit court. ORS 183.400(2) provides a basis for circuit court jurisdiction only "upon review of an order" or "upon enforcement of such rule or order." Plaintiff does not claim that BOLI had initiated an enforcement action against him for failure to pay prevailing wages on the contract at issue here. Nor does he argue that BOLI issued a reviewable final order. Indeed, there is evidence only that BOLI had sent plaintiff a letter stating that it would "consider taking action" that might affect plaintiff's ability to bid on future contracts if plaintiff failed to pay prevailing wages in accordance with BOLI's rules. That letter made no final determination with regard to plaintiff's duty to pay the prevailing wage rate, nor did it preclude further action by BOLI to enforce the prevailing wage rate law, if necessary.[9] The letter itself thus could constitute neither a final order nor the

---

[9] Under ORS 279.355(4), the commissioner of BOLI may "initiate legal proceedings against employers to enjoin future failures to pay required prevailing wages * * *." ORS 279.365(1) further authorizes the commissioner to bring a civil action

"to require a public agency under a public contract with a contractor to withhold twice the wages in dispute if it is shown that the contractor or subcontractor on the contract has intentionally failed or refused to pay the prevailing rate of wage to workers employed on that contract and to require the contractor to pay the prevailing rate of wage and any deficiencies that can be shown to exist because of improper wage payments already made. In addition to other relief, the court may also enjoin any such contractor or subcontractor from committing future violations."

"enforcement of [a] rule or order in the manner provided by law." ORS 183.400(2).

This court also has recognized that a circuit court has jurisdiction to consider a challenge to an administrative rule when the rule's validity is "at issue" in a "separate civil action" properly before the circuit court. *Hay*, 301 Or at 138. As previously noted, at the circuit court, plaintiff argued that the court had acquired jurisdiction over his rule challenge under *Hay*. For the reasons that follow, however, we do not agree that *Hay* provides a basis for jurisdiction here.

The plaintiffs in *Hay* were owners of a beachfront hotel who filed nuisance and trespass claims in circuit court against ODOT for authorizing parking in front of their hotel. 301 Or at 132. ODOT moved for summary judgment, arguing that it was acting pursuant to an agency rule that allowed ODOT to regulate vehicular traffic on the beach and that resolution of the plaintiffs' claims necessarily required a determination of the validity of that rule, which the plaintiffs could obtain only from the Court of Appeals under ORS 183.400(1). *Id.* at 134. This court noted, however, that "ORS 183.400(1) is not exclusive on its face," *id.* at 137, and that to require the plaintiffs first to petition for review of ODOT's rule in the Court of Appeals before they filed a civil action in circuit court for monetary relief "would unnecessarily delay and confuse this state's system for the judicial review of agency acts." *Id.* at 138. For those reasons, this court held that the circuit court had jurisdiction to review the validity of ODOT's rule, even though the requirements of ORS 183.400 otherwise were not met. However, the court emphasized that its decision "[did] not mean that anyone who dislikes a rule may challenge that rule in circuit court; ORS 183.400(1) authorizes the Court of Appeals to hear such a challenge." *Id.* Instead, the court concluded that a circuit court has jurisdiction to hear an administrative rule challenge in a manner not provided for under the APA "[o]nly when a party places a rule's validity at issue in a separate civil action * * *." *Id.* at 138.

---

The commissioner also has available other means of enforcing the prevailing wage requirements. ORS 279.361; ORS 279.370; ORS 652.332.

■     Plaintiff argued in circuit court that the *Hay* exception applies here because he has placed the validity of BOLI's rules "at issue" in a separate civil action for breach of contract. In other words, plaintiff claimed that judicial review of the validity of BOLI's rules is necessary to resolve whether plaintiff or ODOT breached the parties' contract. Plaintiff, however, is mistaken. He seeks to challenge the validity of state agency rules that, earlier, he had agreed to as contract terms.[10] Even if plaintiff could not be forced to comply with those rules by operation of law, he nonetheless could bind · himself to do so by contract, as he did here. *See Vulcan Arbor Hill Corp. v. Reich*, 81 F3d 1110, 1115 (DC Cir 1996) (federal prevailing wage statute enforceable against party, regardless of whether applicable by force of law, when party had agreed to application of statute by contract); *Woodside Village v. Sec. of U.S. Dep't of Labor*, 611 F2d 312, 315 (9th Cir 1980) (same). Instead, the only relevant question is whether BOLI's rules are applicable to plaintiff *as contract terms*.[11] The validity of BOLI's rules, therefore, is not relevant to, or "at issue" in, plaintiff's breach of contract action.

Because the validity of BOLI's rules is not relevant to resolving whether ODOT is liable for breach of contract— *i.e.*, because the validity of the rules is not "at issue"—plaintiff's rule challenge does not satisfy the exception to the jurisdictional requirements of ORS 183.400 that this court identified in *Hay*, 301 Or at 138. The circuit court, therefore, lacked jurisdiction to review BOLI's rules.

The circuit court did not, however, lack jurisdiction to hear other aspects of plaintiff's breach of contract action. The issue remains whether the circuit court correctly concluded, with respect to plaintiff's alternative claim, that the

---

[10] Plaintiff does so even though, as reflected in his affidavit, he appears to have been aware of the manner in which ODOT intended BOLI's rules to apply. He stated that he had "several lawsuits pending against [ODOT and BOLI]" in which he had raised similar issues. He identified two other contract disputes, both of which apparently arose before he signed the contract at issue here.

[11] We note that there might be circumstances in a breach of contract action in which the validity of an agency rule that the parties had incorporated as a contract term is "at issue." For example, contracting parties might agree that rules later determined to be invalid will not be binding as contract terms. There is no evidence of such an agreement in this case.

exception to prevailing wage coverage contained in OAR 839-016-0004(19)(c) applied to the quarry workers and truck drivers at issue as a matter of contract. As we previously noted, the text of that rule provided:

"* * * [B]orrow pits * * * which are established by a supplier of materials for the project *before* opening of bids and not on the project site, are not included in the site of work. Such permanent, previously established facilities are not part of the site of work, even where the operations for a period of time may be dedicated exclusively, or nearly so, to the performance of a contract or project."

(Emphasis added.) The circuit court concluded that plaintiff's quarry workers and truck drivers came within the exception contained in that rule, ruling at oral argument on the motions for summary judgment as follows:

"Based on the uncontroverted facts from the affidavits and the exhibits, the mining site owned by [plaintiff] was established prior to the opening of bids. The fact that a different kind of material was taken from the actual hole or a different kind of material other than the rock, is irrelevant. It was taken from the mining site. I think these are all facts that are uncontroverted."

The circuit court's interpretation of OAR 839-016-0004(19)(c) as a term of the contract provided the basis for its subsequent conclusion that plaintiff had complied with that contractual provision, had not breached the contract, and was entitled to summary judgment. That contract interpretation, rather than the administrative law issue that the circuit court did not (and could not) reach, also is the legal issue that the Court of Appeals should have considered on review. We remand to give that court the opportunity to do so.

The decision of the Court of Appeals is vacated, and the case is remanded to the Court of Appeals for further proceedings.